**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
TAMPA DIVISION

Carl Elridge,

     *Plaintiff,*

v.

GreenSea NV and
Network Shipping Ltd., Inc.

     *Defendant.*

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Carl Elridge sues GreenSea NV and Network Shipping Ltd., Inc. for compensatory damages and alleges:

## FACTS COMMON TO ALL COUNTS

1. Plaintiff Carl Elridge ("Elridge") is a longshore worker as defined under the Longshore and Harbor Workers' Compensation Act ("LHWCA").

2. At all times material, Plaintiff was employed by a stevedore and was acting in the course and scope of his employment.

3. At all times material, Defendant GreenSea NV ("GreenSea") was the owner or bareboat charterer of the vessel GREEN HONDURAS. GreenSea is a foreign corporation with its principle place of business in Willemstad, Curacao.

4. At all times material, Defendant Network Shipping Ltd., Inc. ("Network Shipping") was chartering the vessel GREEN HONDURAS. Network Shipping is a foreign corporation with its principle place of business in Hamilton, Bermuda.

5. At all relevant times, the GREEN HONDURAS was docked at a commercial terminal in Manatee County, Florida. Specifically, it was docked at Port Manatee, Berth 12.

6. There is diversity of citizenship under 28 U.S.C. § 1332 as Plaintiff is a citizen of the State of Florida and the two defendants are foreign corporations with their principle places of business outside of Florida.

7. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1333, as this is a civil case of admiralty and maritime jurisdiction.

8. This Court also has jurisdiction pursuant to 33 U.S.C. § 905(b), the LHWCA.

9. Venue is proper in this District because the incident occurred within this District and/or the vessel was located within this District at the time of the incident.

10. On or about June 17, 2025, Plaintiff operating a riding forklift inside the cargo hold on the GREEN HONDURAS while unloading pallets of fruit into a cargo cage that was used to hoist pallets out of the hold. While Plaintiff was operating the forklift, the ship's deck boards beneath the forklift shifted and failed, causing the forklift suddenly to fall backwards and drop into the deck structure. The deck boards were damaged, not properly secured and were unreasonably dangerous at the time of Plaintiff's incident.

11. The dangerous condition existed in the holding area aboard the GREEN HONDURAS where longshoremen were required to work as part of their cargo unloading operations.

12. The unsecured and damaged deck boards was a vessel condition that existed prior to the start of stevedoring operations on June 17, 2025, and was not created by the stevedore or by cargo-handling activities.

13. The condition involved the structure and decking of the vessel, which was within the exclusive responsibility of the vessel owner/operator/charterer and outside the reasonable ability or authority of the stevedore to repair, secure, or modify.

14. The stevedore did not have the ability, equipment, or authority to permanently remedy the unsecured deck boards without direction or intervention from the vessel.

15. The condition was not open and obvious to Plaintiff. The holding area floor was partially obscured by stacked pallets of cargo and was dimly lit due to inadequate and obstructed lighting. The unsecured and damaged deck boards were not visible to a forklift operator performing assigned cargo operations.

16. While performing his assigned duties, Plaintiff encountered the dangerous condition while driving his forklift on them and suffered a serious injury. The forklift plaintiff was driving tipped over backwards due to the damaged deck boards, causing him serious injuries.

17. As a direct result of this incident, Plaintiff sustained severe injuries to his back, neck, both knees, and left shoulder and will require further medical treatment.

18. Both defendants were operating sea going ships upon the navigable waters of the State of Florida and thus appointed the Secretary of the State of Florida under the Florida Statute § 48.19 (Florida longarm statute for service on nonresidents operating aircraft or watercraft in the state).

19. This is a claim for damages in excess of $75,000.00.

## COUNT I – NEGLIGENCE AGAINST DEFENDANT GREENSEA NV

Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 19 and further alleges:

20. This is a maritime personal injury action brought pursuant to 33 U.S.C. § 905(b) of the LHWCA to recover damages for injuries sustained by Plaintiff as a result of the negligence of GreenSea, the vessel owner. GreenSea owed Plaintiff duties of reasonable care under maritime law and § 905(b) of the LHWCA.

21. GreenSea knew or should have known, through reasonable inspection, of the dangerous condition of the holding areas and/deck throughout the vessel and that they were not suitable for normal cargo unloading operations.

22. GreenSea owed Plaintiff a duty of reasonable care under the circumstances.

23. GreenSea breached that duty in one or more of the following ways:

   a. Failing to maintain the GREEN HONDURAS in a reasonably safe condition;

   b. Failing to timely inspect the cargo holding area, including the area where Plaintiff was injured;

   c. Failing to repair and/or secure the dangerous deck boards;

   d. Failing to warn Plaintiff and/or the Stevedore of the hazardous condition; and

   e. Failing to take reasonable steps to ensure the GREEN HONDURAS was safe for turnover and operations.

## 24. OWNER NEGLIGENCE UNDER 33 U.S.C § 905(b)

   a. **Breach of Turnover Duty.** GreenSea breached its turnover duty by failing to turn over of the GREEN HONDURAS in a condition reasonably safe for longshore operations. At the start of cargo operations, unsecured and/or defective deck boards existed in the work area, creating a hazardous condition that posed an unreasonable risk of harm to longshore workers. GreenSea knew or that should have been known of this condition and failed to correct it or failed to warn Plaintiff of the hazard.

b. **Breach of Duty to Intervene.** GreenSea failed to intervene to protect Plaintiff despite having actual knowledge, or constructive knowledge, that the unsecured deck boards posed an unreasonable risk of serious harm and that the stevedore could not adequately remedy the condition. GreenSea knew or should have known that the hazardous condition persisted during cargo operations and that reliance on the stevedore to remedy the danger was unreasonable yet failed to intervene to protect Plaintiff.

25. As a direct and proximate result of GreenSea's negligence, Plaintiff's sustained injuries to his back, neck, both knees, and left shoulder and will require further medical treatment.

26. As a result of the injuries, Plaintiff has incurred medical expenses, loss of earnings pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life and will incur future loss of earnings/earning potential, loss of found, future medical expenses and future pain and suffering disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life. Plaintiff sustained a permanent injury.

WHEREFORE, Plaintiff Carl Elridge demands judgement against Defendant GreenSea NV, jointly and severally with all defendants, for compensatory damages in excess of $75,000.00, prejudgment interest, and post-judgement interest and costs. Plaintiff demands a jury trial.

## COUNT II – NEGLIGENCE AGAINST DEFENDANT THE CHARTERER/OPERATOR NETWORK SHIPPING LTD., INC.

Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 19 and further alleges:

27. This is a maritime personal injury action brought pursuant to 33 U.S.C. § 905(b) of the LHWCA to recover damages for injuries sustained by Plaintiff as a result of the negligence of Network Shipping Ltd., the vessel charterer. Network Shipping owed Plaintiff duties of reasonable care under maritime law and § 905(b) of the LHWCA.

28. Network Shipping knew or should have known, through reasonable inspection, of the dangerous condition of the holding areas and/deck throughout the vessel and that they were not suitable for normal cargo unloading operations.

29. Network Shipping owed Plaintiff a duty of reasonable care under the circumstances.

30. Network Shipping breached that duty in one or more of the following ways:

   a. Failing to maintain the GREEN HONDURAS in a reasonably safe condition;

   b. Failing to timely inspect the cargo holding area, including the area where Plaintiff was injured;

   c. Failing to repair and/or secure the dangerous deck boards;

   d. Failing to warn Plaintiff and/or the Stevedore of the hazardous condition; and

   e. Failing to take reasonable steps to ensure the GREEN HONDURAS was safe for turnover and operations.

31. **VESSEL CHARTERER NEGLIGENCE UNDER 33 U.S.C § 905(b)**

   a. **Breach of Turnover Duty.** Defendant Network Shipping breached its turnover duty by failing to turn over of the GREEN HONDURAS in a condition reasonably safe for longshore operations. At the start of cargo operations, unsecured and/or defective deck boards existed in the work area, creating a hazardous condition that posed an unreasonable risk of harm to longshore workers. Network Shipping knew

or that should have been known of this condition and failed to correct it or failed to warn Plaintiff of the hazard.

b. **Breach of Active Control Duty.** Network Shipping breached its active control duty by retaining control over the vessel's deck and/or the area where Plaintiff was assigned to work and failing to exercise reasonable care to prevent injuries in that area. Network Shipping permitted unsafe conditions, including unsecured deck boards, to remain while cargo operations were ongoing, and failed to take reasonable steps to eliminate the hazard, restrict access, or otherwise ensure the safety of longshore workers operating in the controlled area.

c. **Breach of Duty to Intervene.** Network Shipping failed to intervene to protect Plaintiff despite having actual knowledge, or constructive knowledge, that the unsecured deck boards posed an unreasonable risk of serious harm and that the stevedore could not adequately remedy the condition. Network Shipping knew or should have known that the hazardous condition persisted during cargo operations and that reliance on the stevedore to remedy the danger was unreasonable yet failed to intervene to protect Plaintiff.

32. As a direct and proximate result of Network Shipping's negligence, Plaintiff's sustained injuries to his back, neck, both knees, and left shoulder and will require further medical treatment.

33. As a result of the injuries, Plaintiff has incurred medical expenses, loss of earnings pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life and will incur future loss of earnings/earning potential, loss of found, future medical

expenses and future pain and suffering disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life. Plaintiff sustained a permanent injury.

WHEREFORE, Plaintiff Carl Elridge demands judgement against Defendant Network Shipping Ltd., Inc., jointly and severally with all defendants, for compensatory damages in excess of $75,000.00, prejudgment interest, and post-judgement interest and costs. Plaintiff demands a jury trial.

*/s/ William W. Munch*

JACOB J. MUNCH
E-mail: jake@munchandmunch.com
Florida Bar Number 376523
CATHERINE M. SAYLOR
E-mail: casey@munchandmunch.com
Florida Bar Number 115593
WILLIAM W. MUNCH
E-mail: william@munchandmunch.com
Florida Bar Number: 1065075
MUNCH and MUNCH, P.A.
600 South Magnolia Avenue – Suite 325
Tampa, Florida 33606
Ph: (813) 254-1557 / Fax: (813) 254-5172
*Attorneys for Plaintiff.*